UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

| | |
|---|---|
| JOHN B. GOLPHIN,<br><br>            Plaintiff,<br>v.<br>MICHAEL J. ASTRUE, Comm.,<br>Social Security Administration,<br><br>            Defendant, | CV 08-07581-(SH)<br><br>MEMORANDUM DECISION<br>AND ORDER |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying plaintiff's application for Disability Insurance Benefits under Sections 216(i) and 223 of the Social Security Act. Pursuant to 28 U.S.C. § 636(c), the parties have consented that the case may be handled by the undersigned. The action arises under 42 U.S.C. § 405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The plaintiff and the defendant have filed their pleadings (Defendant's Answer; Memorandum in Support of Plaintiff's Complaint ["Plaintiff's Mem."]; Memorandum in Support of Defendant's Answer; Plaintiff's

1

Reply to Defendant's Memorandum), and the defendant has filed the certified transcript of record. After reviewing the matter, the Court concludes that the decision of the Commissioner should be reversed and remanded.

On January 23, 2006, plaintiff John Golphin filed an application for a period of disability or Disability Insurance Benefits, alleging an inability to work since May 7, 2005 due to a back injury. (Administrative Record ["AR"] 124-128, 157). On January 31, 2008, an Administrative Law Judge ("ALJ") determined that plaintiff was not disabled within the meaning of the Social Security Act. (AR 13-21).

Following the Appeals Council's denial of plaintiff's request for a review of the hearing decision (AR 1-5), plaintiff filed an action in this Court.

Plaintiff makes four challenges to the ALJ's Decision denying benefits. Plaintiff alleges that the ALJ erred in (1) failing to conclude that plaintiff's impairments met or equaled Listing 1.04; (2) failing to properly determine plaintiff's residual functional capacity; (3) failing to provide clear and convincing reasons for finding plaintiff's testimony not credible; and; and (4) failing to provide proper reasons for finding plaintiff's wife's testimony not credible.

For the reasons discussed below, the Court finds that plaintiff's first and second claims of error do not have merit, and that plaintiff's third and fourth claims of error do have merit.

**ISSUE NO. 1:**

Plaintiff asserts that the ALJ failed to conclude that plaintiff's impairments met or equaled Listing 1.04, specifically, the portion related to nerve root compression. Defendant argues that the ALJ properly assessed that plaintiff's impairments did not meet or equal that Listing.

If a plaintiff suffers a severe impairment, the ALJ is required to decide whether the impairment meets or equals one of the listed impairments. See 20

C.F.R. §§ 404.1520(d), 416.920(d); Young v. Sullivan, 911 F.2d 180, 181 (9th Cir. 1990); Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990). Disability is presumed if a plaintiff's impairment or combination of impairments meets or is medically equivalent to one of the listed impairments. 20 C.F.R. §§ 404.1520(d), 416.920(d); Bowen v. Yuckert, 482 U.S. 137, 141-42, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); Barker v. Secretary of Health & Human Servs., 882 F.2d 1474, 1477 (9th Cir. 1989). An impairment meets a listed impairment if a plaintiff has "a medically determinable impairment(s) that satisfies all of the criteria of the listing." 20 C.F.R. §§ 404.1525(d), 416.925(d); see also Sullivan v. Zebley, 493 U.S. 521, 531, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). The criteria of a listed impairment cannot be met solely based on a diagnosis. 20 C.F.R. §§ 404.1525(d), 416.925(d); see also Key v. Heckler, 754 F.2d 1545, 1549-50 (9th Cir. 1985). An impairment is "medically equivalent to a listed impairment . . . if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a), 416.926(a). If an impairment is not described in the listed impairments, or if the combination of impairments does not meet one of the listed impairments, the determination of medical equivalence is based on a comparison of findings (concerning a plaintiff) "with those for closely analogous listed impairments." 20 C.F.R. §§ 404.1526(b), 416.926(b). The decision is based on "all evidence in [a plaintiff's] record about [his or her] impairment(s) and its effect on [a plaintiff] that is relevant to this finding" and on designated medical or psychological consultants. 20 C.F.R. §§ 404.1526(c), 416.926(c).

Listing 1.04 requires "[d]isorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthristis, verterbral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord." 20 C.F.R. § 404, Subpart P, Appendix 1, Listing of Impairments 1.04. Listing 1.04 further requires one of the following: "Evidence of nerve root compression characterized by neuro-anatomic

<u>distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)</u>"; "Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours"; or "Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively as defined in 1.00B2b."[1] Id. (emphasis added).

The ALJ found that plaintiff had the following severe combination of impairments: "degenerative disc disease at L2-3 and at L5-S1 with osteophystes and a 4 to 5 mm disc protrusion at L5-S1 with possible nerve root involvement, a 2 mm disc protrusion at L2-3, bilateral facet joint arthropathy and ligamenta flava enlargement increasing in severity from L3-4 through L5-S1." (See AR 15).

After noting that there was some evidence of nerve root involvement (specifically, "a series of positive straight leg raising tests, reduced range of motion and apparent neuro-anatomical distribution of some pain complaints"), the ALJ properly found that there was "no substantial evidence of motor loss." (See AR 16). As noted by the ALJ, although a single December 2005 examination of plaintiff by a consulting physician (Kambiz Hannani, M.D., an orthopedist) showed some reduced motor strength (see AR 17, 322), numerous examinations of plaintiff by his treating physician (Humberto Galleno, M.D., an orthopedist) did not show any

---

[1] "Inability to ambulate effectively" is defined as "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 404, Subpart P, Appendix 1, Listing of Impairments 1.00B2b(1).

4

loss of motor strength.  (See AR 18, 332-347 [Dr. Galleno's progress reports dated June 1, 29, July 20, August 10, 31, September 21, October 3, November 3, 23, December 14, 2005, and Dr. Galleno's report of his January 11, 2006 examination]; see also AR 393, 528-31 [Dr. Galleno's progress reports dated August 10 and 27, September 21, October 12, and November 16, 2007 stated there was "no detected symmetrical motor weakness"]).

Moreover, the ALJ properly found that "reports of sensory loss have been mixed and inconsistent."  (See AR 16).  Although, as plaintiff notes, Dr. Galleno found sensory loss on the lateral aspects of plaintiff's right thigh and/or right calf and first web space on five occasions, the first of which was more than two years after the date on which plaintiff suffered the back injury (see AR 393 [August 10, 2007], 528-531 [August 27, September 21, October 21 and November 16, 2007]), Dr. Galleno did not find that plaintiff had suffered sensory loss on numerous occasions (see AR 332-354, 394-97) and Dr. Roger Sohn, an examining orthopedist, found that plaintiff had not suffered sensory loss on that occasion (see AR 436 [November 6, 2006].

Therefore, plaintiff has not met his burden of showing that his combination of impairments met or equaled Listing 1.04, with respect to both motor loss and sensory loss.

**ISSUE NO. 2:**

Plaintiff asserts that the ALJ failed to properly determine plaintiff's residual functional capacity ("RFC").  Specifically, plaintiff challenges the ALJ's interpretations of Dr. Galleno's and Dr. Sohn's conclusions regarding plaintiff's limitations.  Defendant asserts that the ALJ properly assessed plaintiff's RFC.

In his January 11, 2006 report (following an examination of plaintiff in connection with his worker's compensation claim), Dr. Galleno declared that plaintiff's condition was "permanent and stationary."  (AR 334).  In the "Work

Restrictions" section, Dr. Galleno stated the following: "Preclude heavy work indicating that [plaintiff] has lost approximately 50% of his pre injury capacity for bending, stooping, lifting, pushing, pulling and carrying." (AR 335). In the "Vocational Rehabilitation" section, Dr. Galleno stated that the duties of the maintenance job required 4 hours of bending in an 8-hour workday, with squatting up to 7 hours twice per week, and lifting and carrying up to 35 pounds. (Id.).

In his November 6, 2006 report (following an examination of plaintiff in connection with his worker's compensation claim), Dr. Sohn diagnosed plaintiff with a disc herniation of the lumbar spine, and declared plaintiff's condition "permanent and stationary." (AR 440). In the "Work Restrictions" section of the report, Dr. Sohn stated that, with respect to the lumbar spine, plaintiff "is limited to no heavy work and no prolonged weight-bearing." (Id.).

In the Decision, the ALJ found that plaintiff had the RFC to lift and carry up to 20 pounds occasionally and 10 pounds frequently, to sit, stand and walk without significant limitation, and to engage in postural activity occasionally (except for climbing ropes, ladders and scaffolds). (See AR 16).

The ALJ addressed plaintiff's arguments concerning Dr. Galleno's and Dr. Sohn's opinions about plaintiff's limitations, as follows:

> Specifically, counsel argues that when Humberto Galleno, M.D., opined that the claimant had lost approximately 50% of his pre-injury capacity to bend, stoop, push, pull and carry (Exhibit 5F, p. 5) his opinion is, in essence, that the claimant only lifted up to 35 pounds and 50% of this equates to a range of work below a full range of light. However, Dr. Galleno did not opine that the claimant was limited to 50% of his current job's exertional requirements. He opined that the claimant was limited to "approximately 50% of his pre-injury capacity." In essence, he opines that the claimant can lift 50% of the weight prior to injuring his back. As the claimant has no other

6

impairments, his pre-injury capacity was heavy to very heavy exertion. 50% of this is approximately 50 pounds. Likewise, a 50% reduction in the claimant's capacity to engage in postural activities such as bending and stooping, equates with being limited to occasional postural activity, which my residual functional capacity adopts.

It should also be noted that even if counsel's interpretation was adopted, the claimant in fact reports that his job required lifting up to 50 pounds (Exhibit 5E, p. 3). Further, he actually testified that his job required him to lift up to 100 pounds. Thus, a 50% reduction in this regard remains consistent with being able to perform light exertion.

Counsel also claims that when the claimant's workers compensation agreed medical consultant, M.D., opines that the claimant is precluded from heavy work and "prolonged weight-bearing" (Exhibit 9F, p. 9), this means that the claimant is limited to no more than sedentary work. Specifically, counsel claims that a preclusion on "prolonged weight-bearing" means that the claimant is limited to standing and walking at the sedentary level. This interpretation is strained, to say the least. "Prolonged" means extended beyond the normal duration. Thus, in this context Dr. Sohn means that the claimant is precluded from standing and walking beyond normal work levels. Normal levels of standing and walking in the context of preclusion on only heavy work, clearly does not mean that the claimant is limited to significantly less than six hours of standing and walking in an 8-hour workday. (AR 16-17).

The ALJ's statement that Dr. Galleno had limited plaintiff to carrying 50 pounds (50% of 100 pounds), rather than 17 1/2 pounds (50% of 35 pounds), as

7

plaintiff argues (see Plaintiff's Mem. at 2), was a rational interpretation of the evidence. See Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995)("We must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation."). Moreover, the ALJ's interpretation of Dr. Sohn's opinion that plaintiff was restricted from "prolonged" weight bearing -- which the ALJ interpreted to mean that plaintiff was not restricted from standing and walking significantly less than 6 hours in an 8-hour workday (see AR 17) -- is consistent with the Schedule for Rating Permanent Disabilities, State of California Department of Industrial Relations, 1997. See www.dir.ca.gov/DWC/PDR1997.pdf ("Disability Precluding Prolonged Weight-Bearing contemplates ability to do work approximately 75% of time in standing and walking position, and requires sitting approximately 25% of the time."); see also Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 576 (9th Cir. 1988)(noting that there are different measurements used in workers' compensation and social security disability cases).

  The ALJ's determination about plaintiff's RFC is consistent with the above assessments made by Dr. Galleno and Dr. Sohn. Moreover, as noted by the ALJ, on July 16, 2007, when Dr. Galleno examined plaintiff for the first time in eighteen months, Dr. Galleno did not opine that there had been a permanent decline in plaintiff's RFC or that the symptoms were expected to persist for at least 12 months (see AR 18-19, 527). See 42 U.S.C. § 423(d)(1)(A) (A person is "disabled" for the purposes of receiving benefits if the person is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months."). Finally, the ALJ's determination about plaintiff's RFC is consistent with the assessment made by the state agency physician (see AR 382-89). See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996)("[T]he findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings."); 20 C.F.R. § 404.1513(c).

1 **ISSUE NO. 3:**

Plaintiff asserts that the ALJ failed to provide clear and convincing reasons for rejecting his testimony regarding the severity of his symptoms. In response, defendant argues that the ALJ properly found that plaintiff's testimony regarding the severity of his symptoms was not credible.

At the hearing on December 13, 2007, plaintiff testified about his background, work history, symptoms, pain, medications, medical treatments, and daily activities. (See AR 26-50).

In the Decision, the ALJ rejected plaintiff's testimony about his symptoms, as follows:

> Inconsistent statements and actions also undermine his credibility. To begin, the claimant's treatment has not been consistent with that of an individual experiencing debilitating symptoms at all times material hereto. As previously indicated, there is, effectively, an 18 month gap in medical treatment at a time when the claimant alleges that his symptoms were profound and disabling. It is difficult to believe that an individual with profound and disabling symptoms[] would see his primary care physician only once in 18 months. On top of this, the record reflects that the claimant declined surgical intervention for his back impairments. He was also advised, that without the surgery, the pain would continue. Nevertheless, he declined the surgery. This would tend to indicate [] that the claimant's level of pain is manageable and not as debilitating as he now claims. Surely, someone who is truly experiencing "excruciating pain" (Exhibit 3E, p.2) as the claimant alleges, would elect to undergo a procedure which might provide complete relief. On top of this, the record also reflects that the claimant has declined physical therapy, recommended by Dr. Galleno (Exhibit 8F, p. 7). All of this suggests that the claimant['s] symptoms

are not as profound as he claims. When these inconsistencies[] are considered in addition to the fact that no medical source supports his claims, I must conclude that there is ample reason to be cautious accepting the claimant's allegations in the absence of substantial objective medical support. (AR 19).

Here, the ALJ failed to state clear and convincing reasons for rejecting plaintiff's testimony about the severity of his symptoms. See Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

The ALJ's reliance on plaintiff's declination of back surgery was improper. There is no indication in the record that back surgery would have provided plaintiff with "complete relief." (See AR 323, 336). Indeed, plaintiff testified that he was told by Dr. Hannani that surgery would not eliminate plaintiff's pain (see AR 42-43, 46-47) and that at some point Dr. Galleno had recommended against surgery (see AR 47-48). The ALJ's determination about plaintiff's credibility should not have been based on the fact that plaintiff decided not to undergo an elective procedure that would not guarantee relief. It does not appear that the ALJ took into consideration plaintiff's fear of the complications of surgery (see AR 43, 544).

Moreover, the ALJ's reliance on plaintiff's failure to seek medical treatment with his treating physician for an extended period also was improper. Although the failure to seek treatment or follow a prescribed course of treatment may serve as an appropriate basis for making a credibility determination, see Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991)("Another relevant factor may be 'unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment.'"), plaintiff was not asked why he did not seek medical treatment with his treating physician during that period, or what medical treatments (i.e., anti-inflammatory medication, analgesic medication, lumbar bracing, physical therapy, trigger point injections, lumbar epidural injections, see AR 336), if any, he

underwent during that period. Nor was plaintiff asked to explain why he did not avail himself of such treatments. See Social Security Ruling 96-7P ("[T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide . . . that may explain infrequent or irregular medical visits or failure to seek medical treatment. The adjudicator may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner.").

**ISSUE NO. 4:**

Plaintiff asserts that the ALJ failed to provide proper reasons for finding plaintiff's wife's testimony not credible. Defendant argues that the ALJ properly discounted plaintiff's wife's testimony.

At the hearing, plaintiff's wife testified that since plaintiff was injured in 2005, plaintiff has complained of back pain, is depressed and irritable, and she and plaintiff no longer go out or walk to the mall or the beach; that plaintiff does chores around the house (washing the dishes and clothes); that plaintiff has difficulty washing the dishes because he cannot stand up for a long period of time; and that plaintiff has difficulty washing the clothes because he cannot carry or lift the basket very well. (See AR 51-52).

After summarizing plaintiff's wife's testimony, the ALJ stated:
> However, she offers no explanation[] why the claimant would essentially cease[] medical care and treatment for 18 months, refuse surgery and physical therapy, if he was experiencing profound symptoms. Further, while she reports observing him have difficulty performing chores, her observations are not necessarily reflective of

the claimant's maximum residual functional capacity. Accordingly, I do not find that her testimony significantly furthers the merit of the claimant's application. (AR 19-20).

Here, the ALJ failed to give germane reasons for discounting plaintiff's wife's testimony. See Dodrill v. Shalala, 13 F.3d 915, 919 (9th Cir. 1993)("If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness.").

First, plaintiff's wife was not asked why plaintiff did not seek medical treatment with his treating physician for an extended period or what medical treatment, if any, plaintiff underwent during that period. Second, the ALJ's conclusory discrediting of plaintiff's wife's testimony -- "her observations are not necessarily reflective of the claimant's maximum residual functional capacity" -- was improper. See Smith v. Bowen, 849 F.2d 1222, 1226 (9th Cir. 1988)("[D]escriptions by friends and family members in a position to observe [plaintiff's] symptoms and daily activities have routinely been treated as competent evidence."); Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009)("[T]he ALJ should not have discredited her testimony on the basis of its relevance or irrelevance to medical conclusions. . . Nor under our law could the ALJ discredit her lay testimony as not supported by the medical evidence in the record."); 20 C.F.R. § 404.1513(d)(4) (evidence by lay witnesses may be used to show "the severity of [a claimant's] impairment(s) and how it affects [the claimant's] ability to work").

///
///
///
///
///
///

**<u>ORDER</u>**

For the foregoing reasons, the decision of the Commissioner is reversed, and the matter is remanded for further proceedings in accordance with the decision, pursuant to Sentence 4 of 42 U.S.C. § 405(g).

DATED: <u>January 5, 2010</u>

_____
STEPHEN J. HILLMAN
UNITED STATES MAGISTRATE JUDGE